

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES PAUL DUNCAN, | ) | |
| | ) | |
| Petitioner, | ) | 02 C 8990 |
| | ) | |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| NEDRA CHANDLER, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Petitioner James Paul Duncan's Amended Petition for Writ of Habeas Corpus – Person in State Custody, filed pursuant to 28 U.S.C. § 2254. For the following reasons, the Petition is denied.

## I. BACKGROUND

### A. Facts

Petitioner James Paul Duncan ("Duncan") is incarcerated at the Dixon Correctional Center in Dixon, Illinois, where he is in the custody of Respondent Nedra Chandler, the Warden of that facility. On June 4, 1998, the Illinois Appellate Court affirmed Duncan's conviction and forty year sentence for armed robbery. As part of its decision to affirm, the Appellate Court summarized the facts as developed at Duncan's jury trial in the Circuit Court of Cook County, Illinois. The following facts must therefore be presumed to be correct for the purposes of this court's habeas review. See 28 U.S.C. § 2254(e)(1).

On February 26, 1994, at 6:10 a.m., Harold Verrill ("Verrill") arrived at the Old Homestead Tavern (the "Tavern") in Calumet City, Illinois. Verrill worked at the Tavern as a

1

bartender. After tallying the previous evening's receipts, Verrill locked the cash drawer and began preparing to open the Tavern for business. At approximately 6:50 a.m., Verrill heard a man enter the Tavern and yell "lay flat on the floor, face down, don't move or I will shoot you." Verrill looked at the man for three to five seconds, and noted the man's face and clothing. Verrill also saw a long blue barreled gun with brass trim in the man's possession. After the man left, Verrill saw that the cash drawer had been pried open, and that $850 was missing.

Calumet City police officers soon received a radio call that an armed robbery had occurred at the Tavern. Two Calumet City officers responded to the call and met with Verrill. Verrill indicated to the officers that the offender was a white male, approximately six foot two, 225 pounds, with long brown hair, wearing a black leather jacket, blue jeans, and black boots.

The police found $200 in two bundles outside the Tavern door, in addition to a boot print on the bar. The officers discovered similar boot prints in the snow outside the Tavern, and followed those prints until they ended at a set of tire tracks. A few minutes later, another police officer observed a brown Mercury Marquis pull up in front of a nearby apartment building, and watched a man matching the offender's description exit the car and enter the building. This officer had been inspecting a set of boot prints found outside Dick's, another Calumet City tavern. It was stipulated at trial that the Marquis belonged to Duncan. The officers inspected the boot prints near the Marquis, and determined that they matched the prints found near the Tavern and Dick's. Looking through the window of the Marquis, the officers observed a .44 caliber blue steel gun, a crowbar, and a screwdriver.

The officers then entered the apartment building and knocked on the door of an apartment rented by Denise Flores. Flores allowed the officers to enter the apartment. At this point,

Duncan walked out of the bedroom wearing a pair of blue jeans with wet cuffs. One of the officers identified Duncan as the individual who had just exited the Marquis. Duncan was placed under arrest. The officers recovered a black leather jacket and a pair of wet black boots from the apartment. The soles of these boots matched the pattern found in the snow in front of the Tavern and Dick's. As an officer picked up the jacket, a bundle of five dollar bills tumbled to the floor.

An officer then brought Duncan to the Tavern, and Verrill identified Duncan as the individual who had robbed him at gunpoint approximately twenty minutes earlier. The next day, Verrill was taken to the Calumet City Police Department to view a lineup. Verrill positively identified Duncan as the offender.

## B. Procedural History

Duncan was brought to trial before the Circuit Court of Cook County in May 1996. His motion to quash arrest and suppress evidence was denied, as was his motion to suppress identification testimony. At trial, Verrill and the officers involved in the robbery investigation testified as to the events of February 26, 1994. The gun, the black leather jacket, the black boots, a photograph of the crowbar and screwdriver, and a knife found on Duncan at the time of his arrest were admitted into evidence. A jury found Duncan guilty of armed robbery, and the court sentenced Duncan to a term of forty years in the Illinois Department of Corrections.

The Illinois Appellate Court affirmed on June 4, 1998. Duncan then petitioned the Illinois Supreme Court for leave to appeal, but the Court denied this petition on October 6, 1998. On November 5, 1998, Duncan filed a petition for collateral relief under the Illinois Post-Conviction Hearing Act. His petition contained over twenty claims for relief, including, *inter alia*: ineffective assistance of counsel at trial and on appeal, denial of a speedy trial, and improper

denial of the right to enter into a plea agreement. The trial court dismissed the petition as frivolous and patently without merit on August 19, 1999. The Appellate Court affirmed on March 29, 2001. The Illinois Supreme Court denied Duncan's pro se petition for leave to appeal on December 5, 2001. Duncan's attorney then filed another petition for leave to appeal, which the Illinois Supreme Court denied on April 3, 2002. Duncan then filed a petition for a writ of habeas corpus pursuant to the Illinois Habeas Corpus Act. The trial court denied this petition on March 26, 2002, and the Appellate Court affirmed on December 24, 2003. The Supreme Court denied Duncan's petition for leave to appeal on March 24, 2004.

On December 11, 2002, Duncan filed his Petition for Writ of Habeas Corpus in the Northern District of Illinois. The court dismissed Duncan's Petition as prematurely filed, because Duncan was still litigating his state habeas petition. After the conclusion of the state court proceedings, Duncan filed an Amended Petition for Writ of Habeas Corpus on May 3, 2004. The court dismissed this Petition as time barred on January 10, 2005. In light of recent Supreme Court and Seventh Circuit precedent, however, the court ordered Respondent to re-brief the issue of whether Duncan's Petition was time-barred. The court issued this order on April 28, 2005. On June 24, 2005, the Seventh Circuit remanded the case to the district court with instructions to undertake further proceedings consistent with the April 28, 2005 order.

Respondent filed her Answer to Duncan's Petition for Writ of Habeas Corpus on June 28, 2005. In her Answer, Respondent admits that in light of the binding precedent cited in the court's April 28, 2005 order, Duncan's Amended Petition is not time barred. Respondent therefore elected to address the Petition on its merits. The Amended Petition is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Duncan's Petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is *contrary to* clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." Owens v. Frank, 394 F.3d 490, 496 (7th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court's decision is an *unreasonable application* of clearly established Supreme Court law if the state court "identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407; see also Owens, 394 F.3d at 496. In order for a state

5

court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case").

Before reviewing the Illinois courts' decisions, however, the court must determine whether Duncan fairly presented his federal claims to the state courts. Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). Any claim not presented to the state's highest court is deemed procedurally defaulted. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (indicating that "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process").

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that he did not raise in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (discussing exhaustion of claim) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Stewart v. Smith, 536 U.S. 846, 860 (2002); see also Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 450-52 (2000); Coleman, 501 U.S. at 750; Anderson v. Cowen, 227 F.3d 893, 899 (7th Cir. 2000). With the above principles in mind, the court examines Duncan's Petition.

## B. Duncan's Claims for Relief under 28 U.S.C. § 2254

Respondent admits that Duncan's Petition was timely filed, and that he has exhausted his state court remedies. Duncan asserts the following eight grounds for federal habeas corpus relief: (1) that he was denied a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments when the prosecution introduced evidence he may have been involved in another crime the day of the charged offense, (2) that he was denied his Sixth Amendment right to confront a witness against him when the trial court barred defense counsel from questioning a police officer regarding evidence found near Dick's, (3) that trial counsel was ineffective, (4) that the trial court

erred when it failed to give him the option of assistance of counsel during arguments on his motion for a new trial and at his sentencing hearing, (5) that he was denied the right of self-representation at trial, (6) that the prosecution introduced inadmissible real and demonstrative evidence at trial, (7) that his forty year sentence was imposed in violation of his due process rights and Illinois law, and (8) that his forty year sentence violates the rule laid down in Apprendi v. New Jersey, 530 U.S. 466 (2000).

### 1. *Improper Introduction of Other Crimes Evidence*

During Duncan's trial, the state introduced evidence that Duncan was present near Dick's the morning of the robbery at the Tavern. On appeal, Duncan asserted that the trial court's decision to admit this evidence was contrary to Illinois law, as the presentation of this evidence improperly implied that Duncan was involved in prior criminal activity at Dick's. The Appellate Court agreed, reasoning that in Illinois, "[e]vidence of other crimes is not admissible to show the circumstances surrounding an arrest or how an investigation unfolded unless such evidence is also relevant to specifically connect defendant with the crime for which he is being tried." People v. Duncan, 96-2260, slip op. at 20 (Ill. App. Ct. June 4, 1998). The Appellate Court determined, however, that given the "overwhelming evidence" against Duncan, the error was harmless. Id. at 21-22. In his federal habeas petition, Duncan reasserts his claim that the introduction of this evidence was improper under Illinois law.

The question of whether the introduction of this evidence was proper under Illinois law, however, is not cognizable in a federal habeas petition. It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); Escobar v. O'Leary, 943 F.2d 711,

720 (7th Cir. 1991) ("Violations of state evidentiary rules may not be questioned in a federal habeas proceeding unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."). Despite the trial court's error, Duncan's federal constitutional rights were not violated by the admission of this evidence. As the Illinois Appellate Court indicated, the state presented overwhelming evidence of Duncan's guilt, including, *inter alia*, eyewitness testimony, a photograph of Duncan's burglary tools, the gun, and testimony regarding a bundle of money recovered from Duncan's jacket. Duncan's first claim for federal habeas corpus relief is therefore denied.

### 2. *Denial of the Right to Confront a Witness*

Duncan's second assertion is that he was denied his Sixth Amendment right to confront witnesses against him when the trial court prohibited his attorneys from questioning police officers who testified about the evidence found near Dick's. Duncan failed to raise this issue at any time in his state court proceedings. Because Duncan has not presented this issue to the state court, it is procedurally defaulted. See O'Sullivan, 526 U.S. at 848. There is no indication that there is any cause for this default or prejudice therefrom, or that the court's failure to consider this claim will result in a fundamental miscarriage of justice. See Edwards, 529 U.S. at 450-52.

The court notes, however, that Duncan admits that defense counsel was not barred from pursuing this line of inquiry. Am. Pet., at 4. Rather, defense counsel chose not to ask questions of the police officers regarding the evidence found near Dick's, as the trial court cautioned counsel that doing so would open the door for the prosecution to introduce evidence that a robbery had occurred at Dick's on the morning in question, and that Duncan had been charged

with that crime.[1] Duncan was not denied his Sixth Amendment right to confront a witness. His defense attorneys simply made a strategic (and wise) decision not to open the door for the prosecution to present further damaging evidence against Duncan. Duncan's second claim for federal habeas corpus relief is therefore denied.

### 3. *Ineffective Assistance of Counsel at Trial*

In order to establish that his trial counsel was ineffective, Duncan must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694).

When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). There is therefore a strong presumption that Duncan's counsel at trial performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Duncan must show "errors so serious that counsel was not functioning as the 'counsel'

---

[1] The court takes no position on whether the trial court's admonition of defense counsel was proper under Illinois law.

10

guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

Duncan asserts that trial counsel was ineffective for the following reasons: (1) counsel failed to conduct a proper pretrial investigation and interview of the Tavern's owner regarding Verrill's eyesight, (2) counsel failed to effectively cross-examine Verrill regarding his eyesight or his identification of Duncan, (3) counsel allowed the prosecutor to conduct an improper "in-court suggestive identification procedure," (4) counsel failed to effectively challenge the ownership of the boots, (5) counsel failed to assert Duncan's innocence in light of the fact that Duncan's car was found parked two hundred feet from Dick's on the day of the robbery, and (6) counsel failed to object to the introduction of certain evidence presented by the prosecution. Respondent asserts that all of these claims are procedurally barred because Duncan failed to present these claims to the state court at various stages of his cases. The court notes, however, that Duncan did present a claim of ineffective assistance to the state court system. The court therefore, with an abundance of caution, addresses Duncan's ineffective assistance of counsel claims on their merits.

Duncan's first claim is that his trial attorney was ineffective for failing to investigate and interview the owner of the Tavern, Star Thomson ("Thomson"). Duncan speculates that Thomson would have testified as to Verrill's poor eyesight and inability to make an accurate identification of Duncan. In rare cases, an attorney's failure to investigate or call certain witnesses can constitute ineffective assistance of counsel. See Hampton v. Leibach, 347 F.3d 219 (7th Cir. 2003); Sullivan v. Fairman, 819 F. 2d 1382, 1390 (7th Cir. 1987). This is not one of those cases. At trial, Verrill testified that prior to his employment at the Tavern, he suffered an accident in which he lost vision in his right eye. However, he also testified that he could tend

bar, count money, check the cash register, draw up receipts, and recognize customers. Duncan speculates that Thomson would have testified that Verrill's eyesight was so poor that Verrill could not have identified Duncan. Duncan does not explain how Thomson could have convincingly testified that, contrary to Verrill's testimony, she hired a bartender whose eyesight was so bad that he could not count money, draw up receipts, or recognize customers. Defense counsel's "failure" to investigate Thomson, or to call Thomson to the stand to give such dubious testimony, therefore cannot constitute "objective unreasonableness" under the first prong of the Strickland test.

The court determines that the remainder of Duncan's ineffective assistance of counsel claims focus on strategic decisions made by his attorneys during the trial. The court is reluctant to engage in second guessing, or "Monday morning quarterbacking," regarding counsels' strategic decisions in this case. See Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990). There is therefore no indication in the record that Duncan's attorneys at trial were not functioning as the "'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

However, even if counsels' performance was objectively unreasonable, there was no prejudice to Duncan. See Benefiel, 357 F.3d at 662 (quoting Strickland, 466 U.S. at 694). As the court has indicated, the evidence presented against Duncan at trial was overwhelming. The State's evidence included the following: Verrill's eyewitness testimony to the robbery, testimony as to the discovery of Duncan's car near the crime scene, testimony as to the boot prints leading from the Tavern and stopping at tire marks, testimony that the same boot prints were found outside Duncan's apartment building, testimony as to Duncan's appearance in the apartment with

wet jean cuffs, the recovery of the boots and Duncan's black leather jacket containing a roll of five dollar bills in the pocket, a knife found on Duncan's person at the time of his arrest, and a search of Duncan's car which revealed burglary tools and a gun matching Verrill's description of the gun used in the robbery. Given the weight of this evidence, the court is not convinced that, even if defense counsels' performance was objectively unreasonable, the result of Duncan's trial would have been different. See id.

Trial counsels' performance was thus not objectively unreasonable, see Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688), nor did it prejudice Duncan. See Benefiel, 357 F.3d at 662 (quoting Strickland, 466 U.S. at 694). The court therefore finds that trial counsels' performance was not constitutionally ineffective. Duncan's third claim for federal habeas corpus relief is therefore denied.

### 4. Denial of the Option of Counsel for the Sentencing Hearing and during Arguments on Duncan's Motion for a New Trial

Duncan asserts that after the trial concluded, the trial court forced him to proceed pro se during his sentencing hearing and motion for a new trial. Respondent asserts that Duncan has procedurally defaulted this claim by failing to raise it at any point during his state court proceedings. The court agrees, and finds that this claim is procedurally defaulted, see O'Sullivan, 526 U.S. at 848, but also determines that it fails on its merits. Duncan admits that the trial court provided him with counsel from the public defender's office during the trial. Am. Pet., at 12. Duncan also admits that he complained, both in open court and in his pro se motion for a new trial, about the effectiveness of his court-appointed public defenders, and that "the court engaged in an extensive discussion with Petitioner about his ability and right to represent

13

himself on his motion and at sentencing." Id. Finally, Duncan admits that he refused to be represented by these attorneys during sentencing and the motion for a new trial, declined to hire a private attorney, and chose to represent himself at these hearings. Id. It is established law that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." United States v. Gonzales-Lopez, 126 S. Ct. 2557, 2565 (2006) (citing Wheat v. United States, 486 U.S. 153, 159 (1988)). If Duncan is asserting that he has a Constitutional right to a court-appointed attorney of his choice, the law clearly holds otherwise. Duncan's fourth claim for federal habeas corpus relief is therefore denied.

### 5. *Denial of the Right of Self-Representation at Trial*

Duncan next asserts that he was improperly denied the right to represent himself at trial. Duncan presented this claim in his state court post-conviction proceedings, and the Illinois Appellate Court determined that the claim was meritless.

> [T]he record shows [Duncan] did not request complete self-representation until his motion for a new trial . . . [T]he circuit court in the present case denied defendant's request that his attorneys act as co-counsel . . . [D]enial of defendant's request for hybrid representation was not a violation of his constitutional right to self-representation, and therefore, the circuit court did not abuse its discretion.

People v. Duncan, 99-2923, slip op. at 14-15 (Ill. App. Ct. March 29, 2001). Duncan is correct to insist that criminal defendants have a Constitutional right to defend themselves. "And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." Faretta v. California, 422 U.S. 806, 834 (1975) (internal quotation marks and citations omitted). However, there is no Constitutional right to "hybrid representation" in which a defendant acts as co-counsel alongside an attorney. "We recognize, along with all other circuits that have considered the

14

question, that there is no Sixth Amendment right to hybrid representation; rather, whether a defendant may act as co-counsel along with his own attorney, is a matter within the sound discretion of the district court." United States v. Chavin, 316 F.3d 666, 671 (7th Cir. 2002).

The trial court in this case determined that Duncan requested "hybrid representation," and, in its discretion, denied this request. The Illinois Appellate court affirmed, citing the United States Supreme Court and the Seventh Circuit, along with Illinois law. Duncan, 99-2923, slip op. at 13-15. This court can find no indication in the record that these decisions were based on an unreasonable application of the federal law, or on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Duncan's fifth claim for federal habeas corpus relief is therefore denied.

### 6. Introduction of Inadmissible Real and Demonstrative Evidence at Trial

Duncan also asserts that the prosecution was improperly allowed, under Illinois evidence law, to introduce (1) a knife, and (2) a photograph of a pry bar and a screwdriver, into evidence at trial. The court notes that there is no indication in the record that the trial court's decision to allow these items into evidence was an error under Illinois law. As this court has already indicated, even if the state court had erred, it is established law that "'federal habeas corpus relief does not lie for errors of state law.'" Estelle, 502 U.S. at 67 (quoting Lewis, 497 U.S. at 780). Duncan's sixth clam for federal habeas relief is therefore denied.

### 7. Sentence Violates Due Process Rights and Illinois Law

Duncan next argues that the forty year sentence imposed by the Illinois court violates his fundamental due process rights, and also Illinois law. Duncan first asserts that the prosecution was obligated under the United States Constitution to give him pretrial notice that it intended to

15

use Verrill's age as a factor in extending Duncan's sentence to forty years. See 730 ILL. COMP. STAT. 5/5-5-3.2 (b)(4)(ii). Duncan, however, cites no statutes or case law that would support his proposition that the prosecution was required to give him pretrial notice that it intended to extend his sentence. The court therefore considers this argument waived. See United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) ("The lack of development of this argument and absence of supporting case law speaks to the paucity of the argument. Arguments that are not adequately developed or supported are waived.") (quotation marks and internal citations omitted).

Duncan then asserts that there was no evidence before the trial court that Verrill was over sixty years of age. This assertion is patently meritless. Duncan admits that Verrill twice testified that he was over seventy years old. There is no indication in the record that defense counsel ever successfully cross-examined or challenged Verrill's assertions regarding his age. Duncan's seventh claim for federal habeas relief is therefore denied.

### 8. Sentence Violates *Apprendi*

Finally, Duncan asserts that his sentence violates the rule laid down by the Supreme Court in Apprendi v. New Jersey: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000); see also Blakely v. Washington, 542 U.S. 296, 301 (2004); United States v. Booker, 543 U.S. 220, 244 (2005). The Seventh Circuit has held that Apprendi "does not disturb sentences that became final before June 26, 2000, the date of its release." United States v. Curtis, 294 F.3d 841, 844 (7th Cir. 2002); see also Lambert v. McBride, 365 F.3d 557, 562 (7th Cir. 2004). The Seventh Circuit has also held that Booker "does not apply retroactively to criminal cases that became final before its release on

January 12, 2005." McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); see also United States v. Paladino, 401 F.3d 471, 481 (7th Cir. 2005). Duncan's sentence became final on January 4, 1999, which is the last day he could have filed a petition for writ of certiorari in the United States Supreme Court following the Illinois Supreme Court's October 6, 1998 denial of his petition for leave to appeal. See SUP. CT. R. 13(1). Duncan's Apprendi claim is therefore barred under the time constraints explained in Curtis, 294 F.3d at 844 and McReynolds, 397 F.3d at 481. Duncan's eighth and final claim for federal habeas corpus relief therefore fails.

### III. CONCLUSION

For the foregoing reasons, Duncan's Amended Petition for Writ of Habeas Corpus – Person in State Custody is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: April 27, 2007